**Tung & Associates, APLC**
Antony K. Tung (SNB 259158)
Karnit Braun (SBN 230538)
445 South Figueroa Street, Suite 2500
Los Angeles, California 90071
(626) 416-4668
(626) 416-4669 (Facsimile)
E-Mail:  kbraun@tunglaw.com
            Antony.tung@tunglaw.com

Attorneys for Plaintiff, PING GUI

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PING GUI,<br><br>                   Plaintiff,<br><br>        v.<br><br>First Baptist Church of Yorba Linda; Transformation Ministries; Paul Reinhard, an individual; David Lange, an individual; Sterling Bennett, an individual; William "Bill" Eggert, an individual; David Lane, an individual; and DOES 1-10<br><br>                   Defendants | Case No.  8:24-cv-00971-FWS(ADSx)<br><br>Judge:        Hon. Fred W. Slaughter<br>Courtroom:  10D<br><br>**THIRD AMENDED COMPLAINT FOR:**<br><br>1) **Defamation**<br>2) **Hostile Work Environment Harassment**<br>3) **Intentional Interference with Prospective Economic Advantage**<br>4) **Negligent Interference with Prospective Economic Advantage**<br>5) **Intentional Infliction of Emotional Distress**<br>6) **Breach of Implied Covenant of Good Faith and Fair Dealing**<br><br>Complaint Filed: December 1, 2023<br><br>**DEMAND FOR JURY TRIAL** |

Ping Gui complains and alleges the following against the First Baptist

Church of Yorba Linda, Transformation Ministries, Paul Reinhard, an individual,

**THIRD AMENDED COMPLAINT**

Sterling Bennett, an individual, and DOES 1-10, as follows:

## PARTIES

1.     Plaintiff PING GUI ("Plaintiff") is, and at all relevant times herein was, a resident of Yorba Linda, in Orange County, California.

2.     Plaintiff is informed and believes, and based thereon alleges, that Defendant First Baptist Church of Yorba Linda ("FBCYL") is, and at all relevant times herein was, a California Non-Profit Corporation doing business in Yorba Linda, in Orange County, California.

3.     Plaintiff is informed and believes, and based thereon alleges, that Defendant Transformation Ministries ("TM") is, and at all relevant times herein was, a California Non-Profit Corporation doing business as Aspire Network, in Yorba Linda, in Orange County, California. TM exercises control over the operations of First Baptist Church of Yorba Linda, including its employment practices. TM provides leadership training, conflict resolution services, ordination screening and ceremony services and coordinates activities, thereby demonstrating its role as an employer.

4.     Plaintiff is informed and believes, and based thereon alleges, that Defendant Paul Reinhard ("Mr. Reinhard") is an individual and at all relevant times herein was a transitional Pastor for First Baptist Church of Yorba Linda on loan and employed by Transformation Ministries as a Church Health and Development Team Member.

5.     Plaintiff is informed and believes, and based thereon alleges, that Defendant Sterling Bennett ("Mr. Bennett") is an individual and at all relevant times herein was the Deacon Chair for FBCYL.

6.     Plaintiff is unaware of the true names and capacities of DOES 1 through 10, inclusive, and for that reason, names said defendants by such fictitious names.

**THIRD AMENDED COMPLAINT**

Plaintiff will amend this Complaint to state the true names and capacities of the fictitiously named defendants when such information is ascertained. Plaintiff is informed and believes, and thereon alleges, that the fictitiously named defendants are responsible in some manner for the occurrences herein alleged and for the damages sustained by Plaintiff as herein alleged.

7.    Plaintiff is informed and believes, and based thereon alleges, that at all times mentioned herein, each defendant, whether named or unnamed (collectively, "Defendants"), was the agent, servant, and/or employee of the other Defendants, and each of them, whether named or unnamed, and in committing the acts and omissions herein mentioned was acting within the course and scope of said agency, servitude, and employment. At all times mentioned herein, each Defendant, whether named or unnamed, was chargeable with and bound by the knowledge and information received by and on behalf of each other Defendant. Plaintiff is further informed and believes, and based thereon alleges, that at all times relevant herein, all of the acts of the Defendants, whether named or unnamed, and each of them, were ratified and adopted by the acts of their co-Defendants, whether named or unnamed.

8.    Plaintiff is informed and believes, and based thereon alleges, that the named individual Defendants and DOES 1 through 10, inclusive, are indistinguishable to the point that the corporate entity Defendants identified herein are not only influenced and governed by the individual Defendants and/or DOES 1 through 10, inclusive, but that the individuality and separateness of the corporate entities has ceased to exist and that an adherence to the fiction of the separate existence of the corporation would, under the circumstances alleged herein, sanction a fraud, or promote injustice.

9.    At all times mentioned herein, the Defendants, and each of them, were members and engaged in a joint venture, partnership, and common enterprise, and

**THIRD AMENDED COMPLAINT**

TUNG & ASSOCIATES, APLC
445 South Figueroa Street, Suite 2500
Los Angeles, California 90071

acting within the course and scope of and in pursuance of said joint venture, partnership, and common enterprise.

10.    At all times herein mentioned, the acts and omissions of the various Defendants, and each of them, concurred and contributed to the various acts and omissions of each of the other Defendants in proximately causing the complaints, injuries and damages alleged herein.

11.    At all times herein mentioned, Defendants, and each of them, approved of, condoned, and/or otherwise ratified each of the acts or omissions complained of herein. At all times herein mentioned, Defendants, and each of them, aided and abetted the acts and omissions of each of the other Defendants, thereby proximately causing the damages, as herein alleged.

## **<u>JURISDICTION AND VENUE</u>**

12.    This action was initially filed in Superior Court of the State of California, County of Orange, North Justice Center. When Plaintiff filed his First Amended Complaint, Plaintiff dropped the original second cause of action, Wrongful Constructive Termination of Employment in Violation of Public Policy. Plaintiff's refusal to dismiss the case entirely prompted named Defendants to remove this case to Federal Court. When removed, this Court had jurisdiction over this action pursuant to 28 U.S.C. § 1331, as it arose under Title VII of the Civil Rights Act of 1964. When removed, the Court also had supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a). When removed, venue was proper in this district pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claims occurred here, and Defendants are subject to personal jurisdiction in this district.

13.    Presently, Plaintiff is an individual and, at all times relevant to this litigation, was a resident of the County of Orange, in the State of California.

**THIRD AMENDED COMPLAINT**

TUNG & ASSOCIATES, APLC
445 South Figueroa Street, Suite 2500
Los Angeles, California 90071

14.    Also, at all times material to this complaint, Defendants in this action, and each of them, either resided in, or were doing business within the County of Orange, in the State of California.  In addition, all acts complained of herein took place within the judicial district of the Court with jurisdiction over Orange County, in the State of California.

## EXHAUSATION OF ADMINISTRATIVE REMEDIES

15.    All conditions precedent to filing claims set forth herein have been performed or have occurred. Plaintiff Ping Gui filed a timely charge of discrimination with the EEOC on July 20, 2023, and the EEOC issued a Notice of Right to Sue on April 29, 2024. This case was brought within 90 days of receipt of the EEOC notice. Plaintiff has fully exhausted his administrative remedies and is entitled to file this action. This complaint is filed within the appropriate time and pursuant to Court Order.

## FACTUAL ALLEGATIONS

16.    On or about December 20, 2019, Plaintiff Ping Gui ("Plaintiff") became a member of the First Baptist Church of Yorba Linda ("FBCYL" or the "church").

17.    On or about January 20, 2020, Plaintiff began working for the church in a part-time position, assigned to complete office tasks.

18.    On or about December 20, 2020, Plaintiff was approved to become a full-time intern pastor. As such, Plaintiff was on a dual track wherein on the one hand Plaintiff attended and was employed by FBCYL, while on the other hand Plaintiff attended a seminary program offered by Transformation Ministries ("TM"). Thus, Plaintiff was furthering his studies under the seminary program offered by TM, which allowed Plaintiff to have the possibility to be ordained by TM once he completed his studies and passed his interview and exams.

19.    On or about August 2022, Plaintiff engaged with TM to inquire about

TUNG & ASSOCIATES, APLC
445 South Figueroa Street, Suite 2500
Los Angeles, California 90071

-5-

**THIRD AMENDED COMPLAINT**

finalizing the process to become ordained. TM's ordination is recognized by most churches, so that if Plaintiff had obtained TM's ordination, he could have transitioned to being a pastor in other denominations, if not sects of Christianity, separate and apart from FBCYL. TM and Plaintiff did enter into an agreement whereby if Plaintiff passed the psychological testing and interview stages, and paid the set fee, TM would ordain Plaintiff.

20.    On or about February 2023, Plaintiff was voted in as the full-time Assistant Pastor and Vice Moderator of the Church board, and also approved by TM. Plaintiff had been a member of FBCYL, and worked for the church, for over three (3) years, and was on track to be ordained within a couple months, but that all changed once FBCYL installed a transitional minister who fostered a hostile work environment towards Plaintiff, to the detriment of Plaintiff.

21.    On or about March 20, 2023, Defendant Paul Reinhard ("Mr. Reinhard") began preaching at the Church. Mr. Reinhard was sent to preach for First Baptist Church of Yorba Linda under his position as a member of the "Church Health and Development Team" with TM.

22.    On or about April 30, 2023, Defendant Sterling Bennett ("Mr. Bennett") began making discriminatory remarks regarding Plaintiff's race, stating that his Chinese ways of conducting sermons did not belong in their church. At the time, Plaintiff was the only member of the church from China. Plaintiff's public humiliation was exacerbated as various church members commented on the discriminatory remarks, at the time, and both sermons were uploaded to the church's YouTube channel.

23.    On or about May 3, 2023, Plaintiff was inspired and held a sermon that lasted an hour and 15 minutes. However, Mr. Reinhard expressed his displeasure at the length of the sermon and stated that Plaintiff was in the United States and not

TUNG & ASSOCIATES, APLC
445 South Figueroa Street, Suite 2500
Los Angeles, California 90071

-6-

**THIRD AMENDED COMPLAINT**

China and that his sermons should be shorter. This began a campaign by Mr. Reinhard to segregate or belittle Plaintiff and/or Plaintiff's contributions to the church.  For instance, on or around this time Mr. Reinhard engaged Plaintiff in a conversation and inquired about Plaintiff's goals. Plaintiff was earnest in his response, however Mr. Reinhard appeared to tune him out during the one-sided conversation and eventually insultingly insinuated that Mr. Reinhard could not understand what Plaintiff was saying, based on Plaintiff's race, ethnicity, creed and/or background.

24.    On or about May 7, 2023, Mr. Reinhard was confirmed as the transitional lead pastor, which was a role in conflict with the bylaws of FBCYL, and thus did not require a church vote as Mr. Reinhard was being appointed directly by TM.

25.    On or about May 9, 2023, Plaintiff returned from being off work and witnessed his desk and surrounding office space full of trash and clutter that had not previously been present. Plaintiff was advised, and thus is informed and believes that Mr. Reinhard entered the office and began to bring trash onto Plaintiff's workspace. There were old church documents, recyclable materials, and miscellaneous trash left all over his desk and immediate surrounding area. Despite there being two other unused desks in the office, Plaintiff's desk was used as the dumping ground for all the unwanted materials. Plaintiff was the only person who was of Chinese descent who had a desk in the office space.

26.    On or about May 9, 2023, Mr. Bennett stated that because Plaintiff was Chinese, he did not understand America. Mr. Bennett further criticized Plaintiff for referencing a popular News channel, stating that it is politically biased and inappropriate.

27.    Plaintiff continued to feel he was in a hostile work environment and

**THIRD AMENDED COMPLAINT**

TUNG & ASSOCIATES, APLC
445 South Figueroa Street, Suite 2500
Los Angeles, California 90071

was clearly being harassed given that following the incident relating to his desk, Mr. Reinhard commenced to repeatedly demand that Plaintiff clean up his workspace as it was "unprofessional." Mr. Reinhard also began to publicly ridicule Plaintiff by insinuating and repeating that Plaintiff was unprofessional. This increased Plaintiff's anxiety and depression as Defendants' harassment attacks on him had ripple effects and extended to other church leaders, showing Plaintiff that he wasn't welcome in the church. Plaintiff felt isolated, bullied and slandered by Defendants, and each of them.

28.    On or about May 16, 2023, the harassment continued as Defendants would ridicule and belittle Plaintiff and/or Plaintiff's work product. Mr. Reinhard would harass Plaintiff regarding his work product by stating that work Plaintiff had experience doing over the past three (3) years for FBCYL was now suddenly not being done properly, or quickly enough, or was most likely irrelevant. Plaintiff was already taking on multiple tasks that, by all the church leaders' own admission, were designed for more than what one person could handle. In addition, Defendants would imply, based on his background, that Plaintiff lacked the capability to perform tasks within the church.

29.    Plaintiff's time at FBCYL became more hostile and Defendants, including Mr. Reinhard, either directly spread, or fostered an environment whereby it was okay to spread, false rumors and insinuate that Plaintiff was either doing a bad job, or improperly absent from locations that required Plaintiff's presence.  For instance, on or about May 22, 2023, Mr. Reinhard sent an email to church members claiming Plaintiff was not available when needed. Plaintiff was assisting with the Children's ministry and at the same time was expected to help the sermons by providing visual and audio aid. When Plaintiff could not handle juggling both tasks, Mr. Reinhard targeted Plaintiff and spoke about him negatively with other members

**THIRD AMENDED COMPLAINT**

TUNG & ASSOCIATES, APLC
445 South Figueroa Street, Suite 2500
Los Angeles, California 90071

stating he did not belong at the Church as he was unwilling to help.

30.    On or about May 28, 2023, Mr. Reinhard held a sermon where he continued to make discriminatory remarks by using an example of Chinese food being unhealthy and discouraging people from eating it. At the time, Plaintiff was the only Chinese employee of the church.

31.    On or about May 30, 2023, despite the hostile work environment, FBCYL did offer Plaintiff a full-time Assistant Pastor position on a permanent basis, provided Plaintiff's immigration status was adjusted to permanent resident. Plaintiff was in the process of adhering to that agreement when Defendants' bad acts continued.

32.    On or about June 2, 2023, Mr. Bennett and Mr. Reinhard spoke so loudly that other people could hear them when they discussed their displeasure of Plaintiff and stated Plaintiff was dividing the Church. Both knew that Plaintiff was seated nearby and could hear them, showing that the work environment was very hostile and discussions were no longer private.

33.    On or about June 6, 2023, Plaintiff was to be given a psychological test for ordination at Fuller Seminary. Right before the test, Plaintiff received an email from Mr. Reinhard claiming he was dividing the Church (specifically, as a Chinese person causing division in an American church) and threatening his ordination, which is required for a pastor to complete. This caused Plaintiff to have a mental breakdown right before his required examination, after already being pushed to the brink by the actions of Defendants. The email had false claims regarding statements that were not made by Plaintiff.

34.    On or about June 7, 2023, Mr. Reinhard admitted to being frustrated and angry with Plaintiff, and sent a message to Plaintiff advising him he would not be receiving his ordination. It is important to note that Defendants' criticisms of

**THIRD AMENDED COMPLAINT**

Plaintiff had nothing to do with his knowledge of the bible, or canonical knowledge, or any cognizable refutation of religious doctrine. On the same day, Plaintiff received a message from Alex Liao ("Mr. Liao") to discuss the issues between Mr. Reinhard and Plaintiff, and was contacted by the church to be a mediator. However, that conversation ended with no resolution.

35.    On or about June 8, 2023, a meeting occurred regarding another grievance at the church. Church leaders were in attendance, however, Plaintiff was purposely excluded. Plaintiff called Mr. Liao to discuss the issues advising him that he is being bullied, harassed and is now suffering from depression and even has suicidal thoughts.

36.    Plaintiff felt anxiety and depression brought upon by his employers at the workplace. TM's involvement in hiring, training, and supervising church staff, including Plaintiff, and its provision of the tools and resources necessary for Plaintiff to perform his duties, established TM's control over Plaintiff's employment. Plaintiff, therefore, reached out to TM for assistance with this workplace harassment and oppressive conditions. He was terminated instead.

37.    On or about June 10, 2023, Plaintiff filed an HR complaint with Transformation Ministries regarding the above-mentioned treatment and conditions. Plaintiff's hope was to get relief to continue his duties.

38.    On or about June 12, 2023, Plaintiff received a call from David Harris ("Mr. Harris") who handles HR complaints through Transformation Ministries, advising Plaintiff he is dividing the Church. When Plaintiff advised Mr. Harris he had evidence, Mr. Harris told Plaintiff that the Church belonged to Mr. Reinhard and that Plaintiff was not allowed to gather evidence regarding Plaintiff's claims, or in defense of Plaintiff's character.

39.    On or about June 19, 2023, the hostile treatment towards Plaintiff

**THIRD AMENDED COMPLAINT**

Tung & Associates, APLC
445 South Figueroa Street, Suite 2500
Los Angeles, California 90071

escalated even further. It was no longer something that could be disguised as just a joke or have plausible deniability. Derogatory statements and humiliation became the norm. Statements were made in private and in public. Mr. Reinhard sent an email and continued with this cumulative and persistent racist statements relating to Plaintiff's race and stating it is ruining the Church, specifically stating that "an Asian is dividing an American church."

40.    Given that Fuller Seminary had repeatedly and clearly stated they did not want to get involved in issues relating to church leadership and since Plaintiff was intentionally ignored by TM regarding his complaint(s), Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") Complaint regarding the discrimination and harassment he suffered.

## FIRST CAUSE OF ACTION

### Defamation

### (Against all Defendants and DOES 1 through 10)

41.    Plaintiff realleges and incorporates by reference paragraphs 1 through 40, and the Factual Allegations, supra, as though fully set forth herein.

42.    In telling parishioners and other leaders at FBCYL, as well as persons at Fuller Seminary, that Plaintiff was difficult to work with, was unprofessional, did not have the capability to perform tasks for the church and should not be ordained, Defendants expressed and caused each other to express purportedly factual statements about Plaintiff and implied that there was a factual basis to evaluate Plaintiff's work style and professionalism.

43.    On information and belief, Defendants intentionally communicated these specific statements about Plaintiff to parishioners and other leaders at FBCYL, as well as persons at Fuller Seminary.

44.    On information and belief, the parishioners and other leaders at

**THIRD AMENDED COMPLAINT**

FBCYL, as well as persons at Fuller Seminary, understood these statements to refer to Plaintiff, and specifically, to mean that Plaintiff would be an ill-advised choice to be (1) ordained, (2) employed as a pastor, or (3) equipped to be a member of the church, and therefore should not be selected for any of these roles, or be ordained to work in any other denomination through TM's ordination process.

45.     These statements Defendants made about Plaintiff were false, and falsely implied knowledge of negative facts about Plaintiff's character, professionalism and suitability for the church, at large.

46.     Defendants made the above-described defamatory statements with actual malice – i.e., with knowledge of their falsity, or, alternatively, with a reckless disregard for their falsity.

47.     Defendants made these statements without privilege or justification.

48.     The above-described statements concerning Plaintiff directly injured his reputation in his profession or calling, which has a natural tendency to lessen Plaintiff's future prospects and profit.

49.     The above-described statements convey a defamatory meaning. They harm Plaintiff's reputation as to lower it.

50.     It was Defendants' expectation and intent that the defamatory statements would injure Plaintiff economically, including lessening his profits.

51.     As a result of these false and defamatory statements with actual malice, Plaintiff was not ordained or selected as a pastor for FBCYL, nor any other congregation. Plaintiff has suffered damages including but not limited to lost compensation, lost profits, loss to reputation, and increased costs.  These damages are not limited to the lost opportunity to work at another Christian denomination. Rather, they include all the other opportunities that Plaintiff would have had to work at other churches, or with other pastors and congregations, but for Defendants'

Tung & Associates, aplc
445 South Figueroa Street, Suite 2500
Los Angeles, California 90071

-12-
**THIRD AMENDED COMPLAINT**

wrongful conduct, which had a long-lasting ripple effect on Plaintiff's career trajectory as a whole.

52.    Defendants also acted with oppression, fraud, or malice as defined by California Civil Code § 3294, and engaged in highly reprehensible and despicable conduct warranting exemplary damages.

## SECOND CAUSE OF ACTION

### Hostile Work Environment Harassment

### (Against all Defendants and DOES 1 through 10)

53.    Plaintiff refers to and incorporates by reference paragraphs 1 through 52, as though fully set forth herein.

54.    Plaintiff is a member of a protected class, as that phrase is defined by the laws of the United States and the State of California. During the time that Plaintiff was employed by Defendants, and each of them subjected Plaintiff to consistent, pervasive and/or abusive verbal and physical unwelcome beratement, bullying, and discrimination.

55.    Plaintiff is informed and believes, and based thereon, alleges, that him being of Asian descent led to, and was the driving force behind, the harassment and offensive, unlawful actions of Defendants, and each of them, as set forth herein.

56.    The acts and/or omissions of Defendants, and each of them, material and adversely affected the terms and conditions of Plaintiff's employment, in that it created an intimidating, hostile and/or offensive work environment.

57.    Plaintiff alerted TM to the hostile work environment. Instead, not only did Defendants take no action to prevent and promptly correct the harassing and discriminatory behavior but they increased their hostility, as set forth herein.

58.    Plaintiff considered the work environment to be hostile, intimidating, offensive, oppressive and abusive.

**-13-**

**THIRD AMENDED COMPLAINT**

59.     Defendants' actions go against the Ministerial Exception under the First Amendment as Plaintiff's was targeted and harassed based on his race. Mr. Reinhard and Mr. Bennett engaged in harassment based on Plaintiff's race and FBCYL and TM permitted this harassment to occur and continue.

60.     During his employment with Defendants', Plaintiff was harassed by Defendants based on his race. Defendants repeatedly made comments regarding Plaintiff's race and how it was not welcome in the church. They further excluded only him, being the only Chinese employee of the church, from conducting his employment duties. Defendants were aware that Plaintiff was having issues at work based on his repeated emails, text messages, meetings, and phone calls.

61.     Defendant's conduct, as alleged above, was discriminatory and therefore the Ministerial Exception to the First Amendment does not apply. The harassing conduct disrupted Plaintiff's ability to work and his ability to perform the job as usual. It also interfered with and undermined the Plaintiff's personal sense of well-being. All of the forgoing had the purpose and effect of creating a hostile, offensive, oppressive, and intimidating working environment for Plaintiff, and for any reasonable person in Plaintiff's position.

62.     A reasonable person subjected to the harassing conduct would find, as the Plaintiff did, that the harassment so altered working conditions as to make it more difficult to do the job.

63.     Defendants knew or should have known that Plaintiff's working conditions were intolerable and created and knowingly permitted an environment such that Plaintiff's working conditions were intolerable, yet Defendants took no corrective action or ever investigated the racially discriminatory conduct even when the act(s) occurred in their presence.

64.     By their conduct, Defendants have permitted, encouraged, ratified,

**THIRD AMENDED COMPLAINT**

TUNG & ASSOCIATES, APLC
445 South Figueroa Street, Suite 2500
Los Angeles, California 90071

authorized, and caused further harassment to occur and further injury and damage to Plaintiff.

65.    Defendants' harassment of Plaintiff, as alleged above and according to proof, was engaged in with the intent of injuring Plaintiff and harassing him on the basis of his race and constituted unlawful harassment.

66.    As a direct and proximate result of Defendant's conduct as alleged hereinabove, Plaintiff has suffered severe emotional distress, humiliation, embarrassment, mental and emotional distress, tremendous suffering and anxiety, all in an amount exceeding the jurisdictional minimum of this Court, according to proof as trial.

67.    As a direct and proximate result of Defendants' conduct as alleged hereinabove, Plaintiff has suffered economic harm and other consequential damages, all in an amount according to proof at trial.

68.    Plaintiff is informed and believes, and based thereon alleges, that the aforementioned conduct by Defendants, and each of them was willful, wanton, and malicious. At all relevant times, Defendants acted with either conscious or reckless disregard for Plaintiff's rights. Defendants also acted with the knowledge of, or with reckless disregard for, the fact that their conduct was certain to cause injury to Plaintiff.

69.    Plaintiff is further informed and believes, and based thereon alleges, that Defendants, and each of them, intended to cause fear, physical injury, and/or pain and suffering to the Plaintiff.

70.    By virtue of the foregoing, Plaintiff is entitled to recover punitive and exemplary damages from Defendants, and each of them, according to proof at trial.

///

///

TUNG & ASSOCIATES, APLC
445 South Figueroa Street, Suite 2500
Los Angeles, California 90071

-15-

**THIRD AMENDED COMPLAINT**

## THIRD CAUSE OF ACTION

**Intentional Interference with Prospective Economic Advantage**

**(Against All Defendants and DOES 1 through 10)**

71.    Plaintiff realleges and incorporates by reference paragraphs 1 through 70, and the Factual Allegations, supra, as though fully set forth herein.

72.    As alleged above, Plaintiff had an agreement with TM to be ordained. Said agreement consisted of an exchange of ordination certification, for payment of a set fee and satisfaction of TM's guidelines for ordination. Plaintiff's process for ordination was well underway when Defendants engaged in actions that created a hostile work environment, and defamed Plaintiff's character and work product, then set about to exclude Plaintiff from ordination based on Plaintiff's response to said defamation and hostile work environment. When Defendants contacted Fuller Seminary, in an effort to interfere with Plaintiff's ability to be ordained, Defendants knew that this would (1) hinder, delay and/or prevent Plaintiff from being ordained, (2) taint Plaintiff's reputation in such a way so as to hinder, delay and/or prevent Plaintiff from becoming a pastor at any Christian denomination fellowship, even outside of FBCYL or TM's reach, and (3) directly interfered with Plaintiff's immigration status, thereby preventing Plaintiff from obtaining any type of employment within the United States of America.

73.    Based on Defendants actions and/or omissions, parishioners and those involved in the Children's Ministry, stopped engaging with Plaintiff. In addition, based on the damage to Plaintiff's reputation, no other church or congregation has since accepted Plaintiff's application for employment.

74.    Plaintiff had a reasonable probability of future business opportunities and economic benefit in connection with: (1) Plaintiff's relationship with the parishioners at FBCYL, (2) Plaintiff's standing amongst churches associated with

**THIRD AMENDED COMPLAINT**

TM, and (3) Plaintiff's relationship as a Christian pastor, in general.

75.     Defendants had knowledge of such opportunities and intentionally interfered with such opportunities with impunity and in violation of, among others, California Business and Professions Code § 17200.  Defendants, and each of them, committed these tortious acts with deliberate and actual malice, ill-will, and oppression in conscious disregard to Plaintiff's legal rights.

76.     Defendants' actions have disrupted Plaintiff's relationships within the religious community, as well as Plaintiff's immigration status.

77.     As a direct and proximate result of Defendants' conduct, Plaintiff has been injured by Defendants in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION

### Negligent Interference with Prospective Economic Advantage
### (Against All Defendants and DOES 1 through 10)

78.     Plaintiff realleges and incorporates by reference paragraphs 1 through 77, and the Factual Allegations, supra, as though fully set forth herein.

79.     As alleged above, Plaintiff had an agreement with TM to be ordained. Said agreement consisted of an exchange of ordination certification, for payment of a set fee and satisfaction of TM's guidelines for ordination. Plaintiff's process for ordination was well underway when Defendants engaged in actions that created a hostile work environment, and defamed Plaintiff's character and work product, then set about to exclude Plaintiff from ordination based on Plaintiff's response to said defamation and hostile work environment.

80.     When Defendants contacted Fuller Seminary, in an effort to interfere with Plaintiff's ability to be ordained, Defendants knew or should have known that this would (1) hinder, delay and/or prevent Plaintiff from being ordained, (2) taint Plaintiff's reputation in such a way so as to hinder, delay and/or prevent Plaintiff

**THIRD AMENDED COMPLAINT**

from becoming a pastor at any Christian denomination fellowship, even outside of FBCYL or TM's reach, and (3) directly interfered with Plaintiff's immigration status, thereby preventing Plaintiff from obtaining any type of employment within the United States of America.

81.    Based on Defendants actions and/or omissions, parishioners and those involved in the Children's Ministry, stopped engaging with Plaintiff. In addition, based on the damage to Plaintiff's reputation, no other church or congregation has since accepted Plaintiff's application for employment.

82.    Plaintiff had a reasonable probability of future business opportunities and economic benefit in connection with: (1) Plaintiff's relationship with the parishioners at FBCYL, (2) Plaintiff's standing amongst churches associated with TM, and (3) Plaintiff's relationship as a Christian pastor, in general.

83.    Defendants had knowledge of such opportunities and knew or should have known that if they did not act with due care, their actions would interfere with such opportunities and cause Plaintiff to lose the economic benefit of such relationships, or potential future relationships.

84.    Defendants' actions have disrupted Plaintiff's relationships within the religious community, as well as Plaintiff's immigration status.

85.    Defendants, and each of them, have acted negligently and have disrupted Plaintiff's relationships and business opportunities with (1) the parishioners at FBCYL, (2) churches associated with TM, and (3) Plaintiff's relationship as a pastor in any Christian church, at large.

86.    As a direct and proximate result of Defendants' conduct, Plaintiff has been injured by Defendants in an amount to be proven at trial.

///

///

**THIRD AMENDED COMPLAINT**

TUNG & ASSOCIATES, APLC

445 South Figueroa Street, Suite 2500
Los Angeles, California 90071

## FIFTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

### (Against all Defendants and DOES 1 through 10)

87.    Plaintiffs reallege and incorporates by reference paragraphs 1 through 86, as though fully set forth herein.

88.    Defendants' harassment of Plaintiff, as alleged above and according to proof, was engaged in with the intent of injuring Plaintiff and harassing him on the basis of his race and constituted unlawful harassment in employment.

89.    Defendants discriminatory, harassing, and retaliatory actions against Plaintiff constitute a severe and outrageous misconduct and cause Plaintiff extreme emotional distress.

90.    Plaintiff was under constant stress from Defendants when he was outcasted and excluded from the church, harassed, treated with cruelty, and discriminated against, all based on information and belief, as a result of this race. Actions by the Defendant became worse when they vandalized Plaintiff's workspace leaving it in disarray and intentionally trashed.

91.    This resulted in Plaintiff experiencing severe anxiety and depression that he is still on medication for and seeking therapy.

92.    Plaintiff is informed and believes, and based thereon alleges that, Defendants were aware that harassing Plaintiff in the manner alleged herein, would devastate Plaintiff and cause him extreme hardship.

93.    As a direct and proximate result of Defendants' intentional, extreme and outrageous conduct, as alleged herein, Plaintiff has suffered and continues to suffer severe emotional distress.

94.    As a direct and proximate result of Defendants' intentional, extreme and outrageous conduct, Plaintiff has suffered and continues to suffer humiliation,

emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

95.     Plaintiff is informed and believes, and based thereon alleges, that the aforementioned conduct by Defendants, was intentional, willful, wanton, and malicious. At all relevant times, Defendants acted with either conscious or reckless disregard of Plaintiff's rights. Defendants also acted with the knowledge of or with reckless disregard for the fact that their respective conduct was certain to cause injury and/or damage to Plaintiff.

96.     By virtue of the foregoing, Plaintiff is entitled to recover punitive and exemplary damages from Defendants according to proof at the time of trial.

## SIXTH CAUSE OF ACTION

**Breach of Implied Covenant of Good Faith and Fair Dealing**

**(Against Defendant FBCYL, Defendant TM, and DOES 1 through 10)**

97.     Plaintiff realleges and incorporates by reference paragraphs 1 through 96, and the Factual Allegations, supra, as though fully set forth herein.

98.     Plaintiff entered into an implied agreement with Defendant FBCYL and Defendant TM, whereby these entities were expected to uphold the moral and ethical standards they professed, particularly in their interactions with members of their community, including Plaintiff. This implied covenant required Defendants to act in good faith and fairness, especially in their dealings that could significantly impact Plaintiff's future and legal status.

99.     Defendants breached this implied covenant by engaging in actions that directly contradicted their ethical obligations and moral values. Specifically, Defendants acted in bad faith by providing negative reviews and referrals about Plaintiff to third parties, including parishioners, church leaders, and representatives at Fuller Seminary. These statements went beyond the bounds of permissible

**TUNG & ASSOCIATES, APLC**
445 South Figueroa Street, Suite 2500
Los Angeles, California 90071

-20-

TUNG & ASSOCIATES, APLC
445 South Figueroa Street, Suite 2500
Los Angeles, California 90071

conduct under California law, which generally restricts employers to providing only factual information such as dates of employment. Defendants' actions, including false statements about Plaintiff being "difficult to work with," "unprofessional," and "incapable of performing tasks," extended into impermissible character assessments that not only affected Plaintiff's reputation but also directly impacted his immigration status, rendering him unemployable.

100.   Under California law, including principles discussed in *Cotran v. Rollins Hudig Hall International, Inc.* (1998) 17 Cal.4th 93, there is an expectation that decisions impacting an individual's status and reputation must be made in good faith and based on a fair and honest assessment. Defendants failed to meet this standard by failing to warn Plaintiff of the potential consequences of their negative statements or provide him with an opportunity to address these issues. Defendants knew, or should have known, that their actions would have severe implications for Plaintiff's ability to maintain his immigration status and secure future employment.

101.   This breach transcends mere employment issues; it represents a fundamental failure to adhere to the principles of good faith and fair dealing. Defendants' conduct went beyond their ministerial roles, directly interfering with Plaintiff's legal status and his ability to live and work in the country lawfully. By taking actions that affected not only Plaintiff's employment within the church but also his broader future as a lawful resident, Defendants acted in bad faith, undermining the implied promise of fair treatment that Plaintiff reasonably relied upon.

102.   As a direct and proximate result of Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiff has suffered substantial harm. This includes economic harm, emotional distress, and damage to his professional reputation. Defendants' conduct, particularly their malicious and oppressive actions,

**THIRD AMENDED COMPLAINT**

directly resulted in Plaintiff losing the opportunity to be ordained, the ability to work in his chosen field, and the stability of his immigration status.

103.  Pursuant to California *Civil Code* § 3333 or in the alternative, California *Civil Code* § 3294, Plaintiff seeks compensatory damages for the actual harm suffered, including but not limited to economic losses, emotional distress, and reputational damage, or, should the Court find that Defendants acted with oppression, fraud, or malice, punitive damages as well as any other relief that the Court deems just and proper.

## PRAYER

Wherefore, Plaintiff prays for judgment against Defendants, and each of them, as follows:

### ON THE FIRST CAUSE OF ACTION

1.  For damages according to proof;

2.  For punitive damages;

### ON THE SECOND CAUSE OF ACTION

3.  For damages according to proof;

4.  For punitive damages;

### ON THE THIRD CAUSE OF ACTION

5.  For damages according to proof;

6.  For prejudgment interest on said sum;

### ON THE FOURTH CAUSE OF ACTION

7.  For damages according to proof;

8.  For prejudgment interest on said sum;

### ON THE FIFTH CAUSE OF ACTION

9.  For damages according to proof;

10.  For punitive damages;

**THIRD AMENDED COMPLAINT**

## ON THE SIXTH CAUSE OF ACTION

11.    For damages according to proof;

12.    For punitive damages;

## ON ALL CAUSES OF ACTION

13.    For costs of suit;

14.    For post-judgment interest on said sums at the maximum legal rate until paid;

15.    For costs of expert witnesses; and

16.    For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.


DATED: September 18, 2024          **TUNG & ASSOCIATES, APLC**


By:  *Karnit Braun*
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
KARNIT BRAUN, Esq.
ANTONY K. TUNG, Esq.
Attorneys for Plaintiff,
PING GUI

**-23-**

**THIRD AMENDED COMPLAINT**