UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-00971-FWS-DFM                                          Date: October 30, 2024
Title: Ping Gui v. First Baptist Church, *et al.*

Present: **HONORABLE FRED W. SLAUGHTER, UNITED STATES DISTRICT JUDGE**

| Melissa H. Kunig | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

Attorneys Present for Plaintiffs:                    Attorneys Present for Defendants:

Not Present                                                         Not Present

**PROCEEDINGS: (IN CHAMBERS) ORDER GRANTING DEFENDANT TRANSFORMATION MINISTRIES' MOTION TO DISMISS [53] AND CHURCH DEFENDANTS' MOTION TO DISMISS [54]**

Before the court are two motions: (1) Defendant Transformation Ministries' ("TM") Motion to Dismiss Plaintiff Ping Gui's ("Plaintiff") Third Amended Complaint (Dkt. 53, "TM Motion" or "TM Mot."), and (2) Defendant First Baptist Church of Yorba Linda (the "Church"), Defendant Paul Reinhard ("Reinhard"), Defendant David Lange ("Lange"), Defendant Sterling Bennett ("Bennett"), and Defendant William Eggert's ("Eggert") (collectively, the "Church Defendants") Motion to Dismiss Plaintiff's Third Amended Complaint (Dkt. 54, "Church Defendants' Motion" or "Church Mot."). Plaintiff opposes the TM Motion and the Church Defendants' Motion. (Dkt. 55 ("TM Opp."); Dkt. 57 ("Church Opp.").) The court finds these matters appropriate for resolution without oral argument. *See* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."); C.D. Cal. L.R. 7-15 (authorizing courts to "dispense with oral argument on any motion except where an oral hearing is required by statute"). Accordingly, the hearing set for November 14, 2024, is **VACATED** and off calendar. Based on the record, as applied to the applicable law, the TM Motion and the Church Defendants' Motion are both **GRANTED**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-00971-FWS-DFM          Date: October 30, 2024
Title: Ping Gui v. First Baptist Church, *et al.*

## I. Summary of the Third Amended Complaint's Allegations[1]

On January 20, 2020, Plaintiff began working for the Church part-time, completing office tasks. (Dkt. 52 (Third Amended Complaint, "TAC") ¶ 17.) On December 20, 2020, Plaintiff was "approved to become a full-time intern pastor." (*Id.* ¶ 18.) At that time, "Plaintiff was furthering his studies under the seminary program offered by TM, which allowed Plaintiff to have the possibility to be ordained by TM once he completed his studies and passed his interview and exams." (*Id.*) In August 2022, TM and Plaintiff "enter[ed] into an agreement whereby if Plaintiff passed the psychological testing and interview stages, and paid the set fee, TM would ordain Plaintiff." (*Id.* ¶ 19.) "TM's ordination is recognized by most churches, so that if Plaintiff had obtained TM's ordination, he could have transitioned to being a pastor in other denominations, if not sects of Christianity, separate and apart from" the Church. (*Id.*)

In February 2023, "Plaintiff was voted in as the full-time Assistant Pastor and Vice Moderator of the Church board, and also approved by TM." (*Id.* ¶ 20.) "Plaintiff had been a member of [the Church], and worked for the church, for over three (3) years, and was on track to be ordained within a couple months, but that all changed once [the Church] installed a transitional minister who fostered a hostile work environment towards Plaintiff, to the detriment of Plaintiff." (*Id.*)

On April 30, 2023, Bennett "began making discriminatory remarks regarding Plaintiff's race, stating that his Chinese ways of conducting sermon did not belong in their church." (*Id.* ¶ 22.) "At the time, Plaintiff was the only member of the church from China." (*Id.*) "Plaintiff's public humiliation was exacerbated as various church members commented on the discriminatory remarks, at the time, and both sermons were uploaded to the church's YouTube channel." (*Id.*)

---

[1] For purposes of the Motion, the court "accept[s] factual allegations in the [Third Amended] Complaint as true and construes the pleadings in the light most favorable to [Plaintiff]." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-00971-FWS-DFM                                        Date: October 30, 2024
Title: Ping Gui v. First Baptist Church, *et al.*

On May 3, 2023, "Plaintiff was inspired and held a sermon that lasted an hour and 15 minutes." (*Id.* ¶ 23.) Reinhard "expressed his displeasure at the length of the sermon and stated that Plaintiff was in the United States and not China and that his sermons should be shorter." (*Id.*) "This began a campaign by Mr. Reinhard to segregate or belittle Plaintiff and/or Plaintiff's contributions to the church." (*Id.*) "For instance, . . . around this time Mr. Reinhard engaged Plaintiff in a conversation and inquired about Plaintiff's goals," and although "Plaintiff was earnest in his response, . . . Mr. Reinhard appeared to tune him out during the one-sided conversation and eventually insultingly insinuated that Mr. Reinhard could not understand what Plaintiff was saying, based on Plaintiff's race, ethnicity, creed and/or background." (*Id.*)

On May 7, 2023, Reinhard "was confirmed as the transitional lead pastor, which was a role in conflict with the bylaws of [the Church], and thus did not require a church vote as Mr. Reinhard was being appointed directly by TM." (*Id.* ¶ 24.) On May 9, 2023, "Plaintiff returned from being off work and witnessed his desk and surrounding office space full of trash and clutter that had not previously been present." (*Id.* ¶ 25.) Someone told Plaintiff that Reinhard "entered the office and began to bring trash" into it, leaving "old church documents, recyclable materials, and miscellaneous trash . . . all over [Plaintiff's] desk and immediate surrounding area." (*Id.*) "Despite there being two other unused desks in the office, Plaintiff's desk was used as the dumping ground for all the unwanted materials." (*Id.*) "Plaintiff was the only person who was of Chinese descent who had a desk in the office space." (*Id.*)

On May 9, 2023, "Bennett stated that because Plaintiff was Chinese, he did not understand America," and "further criticized Plaintiff for referencing a popular News channel, stating that it is politically biased and inappropriate." (*Id.* ¶ 26.)

"Plaintiff continued to feel he was in a hostile work environment and was clearly being harassed given that following the incident relating to his desk, Mr. Reinhard commenced to repeatedly demand that Plaintiff clean up his workspace as it was 'unprofessional.'" (*Id.* ¶ 27.) "Reinhard also began to publicly ridicule Plaintiff by insinuating and repeating that Plaintiff was unprofessional." (*Id.*) "This increased Plaintiff's anxiety and depression as Defendants' harassment attacks on him had ripple effects and extended to other church leaders, showing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

JS-6

| | |
|---|---|
| Case No. 8:24-cv-00971-FWS-DFM | Date: October 30, 2024 |
| Title: Ping Gui v. First Baptist Church, *et al.* | |

Plaintiff that he wasn't welcome in the church." (*Id.*) "Plaintiff felt isolated, bullied and slandered by Defendants, and each of them." (*Id.*)

On "May 16, 2023, the harassment continued as Defendants would ridicule and belittle Plaintiff and/or Plaintiff's work product." (*Id.* ¶ 28.) "Reinhard would harass Plaintiff regarding his work product by stating that work Plaintiff had experience doing over the past three (3) years for [the Church] was now suddenly not being done properly, or quickly enough, or was most likely irrelevant." (*Id.*) "Plaintiff was already taking on multiple tasks that, by all the church leaders' own admission, were designed for more than what one person could handle." (*Id.*) "In addition, Defendants would imply, based on his background, that Plaintiff lacked the capability to perform tasks within the church." (*Id.*)

"Plaintiff's time at [the Church] became more hostile and Defendants, including Mr. Reinhard, either directly spread, or fostered an environment whereby it was okay to spread, false rumors and insinuate that Plaintiff was either doing a bad job, or improperly absent from locations that required Plaintiff's presence." (*Id.* ¶ 29.) On May 22, 2023, "Reinhard sent an email to church members claiming Plaintiff was not available when needed." (*Id.*) "Plaintiff was assisting with the Children's ministry and at the same time was expected to help the sermons by providing visual and audio aid," but "[w]hen Plaintiff could not handle juggling both tasks, Mr. Reinhard targeted Plaintiff and spoke about him negatively with other members stating he did not belong at the Church as he was unwilling to help." (*Id.*)

On May 28, 2023, "Reinhard held a sermon where he continued to make discriminatory remarks by using an example of Chinese food being unhealthy and discouraging people from eating it." (*Id.* ¶ 30.) At this time, Plaintiff continued to be the Church's only Chinese employee. (*Id.*)

On May 30, 2023, "despite the hostile work environment, [the Church] did offer Plaintiff a full-time Assistant Pastor position on a permanent basis, provided Plaintiff's immigration status was adjusted to permanent resident." (*Id.* ¶ 31.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-00971-FWS-DFM                          Date: October 30, 2024
Title: Ping Gui v. First Baptist Church, *et al.*

On June 2, 2023, Bennett and Reinhard "spoke so loudly that other people could hear them where they discussed their displeasure of Plaintiff and stated Plaintiff was dividing the Church." (*Id.* ¶ 32.) "Both knew that Plaintiff was seated nearby and could hear them, showing that the work environment was very hostile and discussions were no longer in private." (*Id.*)

On June 6, 2023, Plaintiff was scheduled to receive a psychological test for ordination. (*Id.* ¶ 33.) "Right before the test, Plaintiff received an email from Mr. Reinhard claiming he was dividing the Church (specifically, as a Chinese person causing division in an American church) and threatening his ordination, which is required for a pastor to complete." (*Id.*) "This caused Plaintiff to have a mental breakdown right before his required examination, after already being pushed to the brink by the actions of Defendants." (*Id.*) "The email had false claims regarding statements that were not made by Plaintiff." (*Id.*)

On June 7, 2023, "Reinhard admitted to being frustrated and angry with Plaintiff, and sent a message to Plaintiff advising him he would not be receiving his ordination." (*Id.* ¶ 34.) On the same day, Plaintiff received a message from Alex Liao ("Liao"), who the Church contacted to be a mediator regarding Plaintiff's issues with the Church. (*Id.*) That conversation ended with no resolution. (*Id.*)

On June 8, 2023, a meeting occurred regarding another grievance at the church. (*Id.* ¶ 35.) "Church leaders were in attendance, however, Plaintiff was excluded." (*Id.*) Plaintiff called Liao and told him that Plaintiff was being bullied and harassed and was suffering from depression and suicidal thoughts. (*Id.*)

"Plaintiff felt anxiety and depression brought upon by his employers at the workplace." (*Id.* ¶ 36.) Believing TM had "control over Plaintiff's employment," Plaintiff "reached out to TM for assistance with this workplace harassment and oppressive conditions," but "[h]e was terminated instead." (*Id.*)

On June 10, 2023, Plaintiff filed a Human Resources complaint with TM regarding his treatment, "hop[ing] . . . to get relief to continue his duties. (*Id.* ¶ 37.) On June 12, 2023, David

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-00971-FWS-DFM                                    Date: October 30, 2024
Title: Ping Gui v. First Baptist Church, *et al.*

Harris ("Harris"), who handles Human Resources complaints for TM, called Plaintiff and advised Plaintiff that he was "dividing the Church." (*Id.* ¶ 38.) "When Plaintiff advised Mr. Harris he had evidence, Mr. Harris told Plaintiff that the Church belonged to Mr. Reinhard and that Plaintiff was not allowed to gather evidence regarding Plaintiff's claims, or in defense of Plaintiff's character." (*Id.*)

On June 19, 2023, "the hostile treatment towards Plaintiff escalated even further" so as to "no longer [be] something that could be disguised as just a joke or have plausible deniability." (*Id.* ¶ 39.) "Derogatory statements and humiliation became the norm. Statements were made in private and in public. Mr. Reinhard sent an email and continued with this cumulative and persistent racist statements relating to Plaintiff's race and stating it is ruining the Church, specifically stating that 'an Asian is dividing an American church.'" (*Id.*)

Based on these facts, Plaintiff alleges claims for (1) defamation, (2) hostile work environment harassment, (3) intentional interference with prospective economic advantage, (4) negligent interference with prospective economic advantage, (5) intentional infliction of emotional distress, and (6) breach of the implied covenant of good faith and fair dealing. (*Id.* ¶¶ 41-103.)

## II.     Legal Standard

Rule 12(b)(6) permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). To withstand a motion to dismiss brought under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a plaintiff must provide "more than labels and conclusions" and "a formulaic recitation of the elements of a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-00971-FWS-DFM                              Date: October 30, 2024
Title: Ping Gui v. First Baptist Church, *et al.*

cause of action" such that the factual allegations "raise a right to relief above the speculative level." *Id.* at 555 (citations and internal quotation marks omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (reiterating that "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). "A Rule 12(b)(6) dismissal 'can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

"Establishing the plausibility of a complaint's allegations is a two-step process that is 'context-specific' and 'requires the reviewing court to draw on its judicial experience and common sense.'" *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995-96 (9th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 679). "First, to be entitled to the presumption of truth, allegations in a complaint . . . must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Id.* at 996 (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). "Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.* (quoting *Starr*, 652 F.3d at 1216); *see also Iqbal*, 556 U.S. at 681.

Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). On one hand, "[g]enerally, when a plaintiff alleges facts consistent with both the plaintiff's and the defendant's explanation, and both explanations are plausible, the plaintiff survives a motion to dismiss under Rule 12(b)(6)." *In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*, 28 F.4th 42, 47 (9th Cir. 2022) (citing *Starr*, 652 F.3d at 1216). But, on the other, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Eclectic Props. E.*, 751 F.3d at 996 (quoting *Iqbal*, 556 at U.S. 678). Ultimately, a claim is facially plausible where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-00971-FWS-DFM                                       Date: October 30, 2024
Title: Ping Gui v. First Baptist Church, *et al.*

___

alleged." *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 at 556); *accord Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012).

In *Sprewell v. Golden State Warriors*, the Ninth Circuit described legal standards for motions to dismiss made pursuant to Rule 12(b)(6):

> Review is limited to the contents of the complaint. All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.

266 F.3d 979, 988 (9th Cir. 2001) (citations omitted).

## III. Discussion

The TM Motion and the Church Defendants' Motion argue that all of Plaintiff's claims are barred by the ministerial exception. (TM Mot. at 14-23; Church Mot. at 9-12.) Specifically, the Church Defendants argue that the TAC's claims "rest[] upon the same foundational argument: that the Church Defendants acted wrongfully and illegally in deciding that Plaintiff was not the right pastor for the Church." (Church Mot. at 11.) The court agrees.

"The Supreme Court has long recognized religious organizations' broad right to control the selection of their own religious leaders." *Puri v. Khalsa*, 844 F.3d 1152, 1157 (9th Cir. 2017). Specifically, the "'ministerial exception,' grounded in the First Amendment," precludes "claims concerning the employment relationship between a religious institution and its ministers." *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171, 188 (2012). The exception bars "an employment discrimination suit brought on behalf of a minister, challenging her church's decision to fire [him or] her." *Id.* at 196. This "ensures that

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-00971-FWS-DFM             Date: October 30, 2024
Title: Ping Gui v. First Baptist Church, *et al.*

the authority to select and control who will minister to the faithful—a matter 'strictly ecclesiastical,'—is the church's alone." *Id*. at 194-95. Indeed, "[r]equiring a church to accept or retain an unwanted minister, or punishing a church for failing to do so, . . . interferes with the internal governance of the church, depriving the church of control over the selection of those who will personify its beliefs" and "infringes the Free Exercise Clause, which protects a religious group's right to shape its own faith and mission through its appointments." *Puri*, 844 F.3d at 1157-58; *see also Hosanna-Tabor*, 565 U.S. at 196 ("The church must be free to choose those who will guide it on its way"). The ministerial exception applies to Title VII claims as well as "to any state law cause of action that would otherwise impinge on the church's prerogative to choose its ministers or to exercise its religious beliefs in the context of employing its ministers." *Puri*, 844 F.3d at 1158; *Bollard v. California Province of the Society of Jesus*, 196 F.3d 940, 950 (1999) ("Just as there is a ministerial exception to Title VII, there must also be a ministerial exception to any state law cause of action that would otherwise impinge on the church's prerogative to choose its ministers or to exercise its religious beliefs in the context of employing its ministers.").

"There are certain employment claims that are not necessarily subject to the ministerial exception." *Orr v. Christian Bros. High Sch., Inc.*, 2021 WL 5493416, at *2 (9th Cir. Nov. 23, 2021). These include "retaliatory harassment claims" and "sexual harassment claim[s] unrelated to a religious organization's employment decisions. *Id.* (citing *Bollard*, 196 F.3d at and *Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 959-66 (9th Cir. 2004)); *see Demkovich v. St. Andrew the Apostle Par., Calumet City*, 3 F.4th 968, 984 (7th Cir. 2021) ("acknowledge[ing] the split in the circuits on whether the ministerial exception covers hostile work environment claims," and stating that "[t]he Ninth Circuit holds that it does not, at least as a categorical matter"). However, when a plaintiff's allegations regarding harassment or discrimination "are so intertwined with the employment decisions that the claims cannot be separated," the ministerial exception applies to bar those claims. *Orr*, 2021 WL 5493416, at *2.

In this case, the court finds that all of Plaintiff's claims involve the church's "authority to select and control who will minister to the faithful," *Hosanna-Tabor*, 565 U.S. at 188, or "are so intertwined with the employment decisions that the claims cannot be separated." *Orr*, 2021 WL

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-00971-FWS-DFM							Date: October 30, 2024
Title: Ping Gui v. First Baptist Church, *et al.*

5493416, at *2.  Plaintiff's first claim, for defamation, challenges Defendants' statements to "parishioners and other leaders at [the Church], as well as persons at Fuller Seminary, that Plaintiff was difficult to work with, was unprofessional, did not have the capability to perform tasks for the church and should not be ordained."  (TAC ¶ 42.)  The court finds this claim necessarily involves Defendants' exercise of their "authority to select and control who will minister to the faithful—a matter 'strictly ecclesiastical,'" which is meant to remain "the church's alone."  *Hosanna-Tabor*, 565 U.S. at 194-95.

Similarly, Plaintiff's second claim, for hostile work environment harassment, is based on statements Defendants made regarding their assessment of whether Plaintiff was the appropriate person to "minister to the [Church's] faithful."  *Id.*; (*see, e.g.*, TAC ¶ 22 (challenging "discriminatory remarks regarding Plaintiff's race, stating that his Chinese ways of conducting sermons did not belong in their church"); *id.* ¶ 26 ("Mr. Bennett stated that because Plaintiff was Chinese, he did not understand America."); *id.* ¶ 32 ("Mr. Bennett and Mr. Reinhard spoke so loudly that other people could hear them when they discussed their displeasure of Plaintiff and stated Plaintiff was dividing the Church."); *id.* ¶ 33 ("Plaintiff received an email from Mr. Reinhard claiming he was dividing the Church (specifically, as a Chinese person causing division in an American church) and threatening his ordination, which is required for a pastor to complete."); *id.* ¶ 39 (describing email from Reinhard "continu[ing] with this cumulative and persistent racist statements relating to Plaintiff's race and stating it is ruining the Church, specifically stating that 'an Asian is dividing an American church'")).  But "courts are bound to stay out of employment disputes involving those holding certain important positions with churches and other religious institutions."  *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732, 746-47 (2020).  The court finds that adjudicating this claim would prevent the Church from "retain[ing] unfettered freedom in its choice of ministers" who "represent the church to the people" and "act as the church's lifeblood."  *Bollard*, 196 F.3d at 946 (internal quotation omitted).

Likewise, Plaintiff's third and fourth claims, for intentional and negligent interference with prospective economic advantage, are based on Plaintiff's allegations that "Defendants engaged in actions that created a hostile work environment, and defamed Plaintiff's character

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-00971-FWS-DFM                         Date: October 30, 2024
Title: Ping Gui v. First Baptist Church, *et al.*

and work product, then set about to exclude Plaintiff from ordination based on Plaintiff's response to said defamation and hostile work environment," hurting Plaintiff's "future business opportunities and economic benefit in connection with: (1) Plaintiff's relationship with the parishioners at [the Church], (2) Plaintiff's standing amongst churches associated with TM, and (3) Plaintiff's relationship as a Christian pastor, in general." (Compl. ¶¶ 72-74 (intentional interference claim; *id.* ¶¶ 79-82 (similar for negligent interference claim)). The court finds these are "state law cause[s] of action that would otherwise impinge on the church's prerogative to choose its ministers or to exercise its religious beliefs in the context of employing its ministers," *Puri*, 844 F.3d at 1158, and adjudicating these claims would eviscerate "important protections to churches that seek to choose their representatives free from government interference and according to the dictates of faith and conscience." *Bollard*, 196 F.3d at 945; *see also id.* at 947 ("Moreover, this is not a case about the Jesuit order's choice of representative, a decision to which we would simply defer without further inquiry. Bollard does not complain that the Jesuits refused to ordain him or engaged in any other adverse personnel action.").

Finally, Plaintiff's fifth and sixth claims, for intentional infliction of emotional distress and breach of the implied covenant of good faith and fair dealing, reflect a challenge to actions that "are so intertwined with the employment decisions that the claims cannot be separated." *Orr*, 2021 WL 5493416, at *2; (*see* TAC ¶ 90 ("Plaintiff was under constant stress from Defendants when he was outcasted and excluded from the church, harassed, treated with cruelty, and discriminated against, all based on information and belief, as a result of this race."); *id.* ¶ 99 ("Defendants breached this implied covenant by engaging in actions that directly contradicted their ethical obligations and moral values. Specifically, Defendants acted in bad faith by providing negative reviews and referrals about Plaintiff to third parties, including parishioners, church leaders, and representatives at Fuller Seminary.").)

Consistent with this analysis, the court observes that Plaintiff describes the damages he suffered as "including but not limited to lost compensation, lost profits, loss to reputation, and increased costs," including "opportunities that Plaintiff would have had to work at other churches, or with other pastors and congregations, but for Defendants' wrongful conduct, which

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

JS-6

Case No. 8:24-cv-00971-FWS-DFM     Date: October 30, 2024
Title: Ping Gui v. First Baptist Church, *et al.*

had a long-lasting ripple effect on Plaintiff's career trajectory as a whole." (TAC ¶ 51; *see id.* ¶ 73 ("In addition, based on the damage to Plaintiff's reputation, no other church or congregation has since accepted Plaintiff's application for employment."); *id.* ¶ 81 (same).) But "the termination of [Plaintiff's] ministry and h[is] inability to find other pastoral employment are consequences of protected employment decisions," and "a damage award based on lost or reduced pay [Plaintiff] may have suffered from those employment decisions would necessarily trench on the Church's protected ministerial decisions." *Elvig*, 375 F.3d at 966.

Plaintiff argues the ministerial exception does not apply to bar his claims because "Plaintiff's allegations focus on racially motivated personal attacks and harassment unrelated to any religious doctrine or decision-making process" including "that he was subject to numerous derogatory racial comments on a cumulative basis and over time, such as, 'Chinese ways of conducting sermons did not belong' (TAC ¶ 22), that he was excluded and belittled due to his race (TAC ¶ 23), and that his desk was deliberately trashed to publicly humiliate him (TAC ¶¶ 26-27)," which "are not claims that implicate religious doctrine or church governance but are rooted in personal, racially motivated animus." (TM Opp. at 12-13; Church Opp. at 10-11.) The court disagrees. "The ministerial exception was recognized to preserve a church's independent authority in" matters involving "the authority to select, supervise, and if necessary, remove a minister without interference by secular authorities," because "[w]ithout that power, a wayward minister's preaching, teaching, and counseling could contradict the church's tenets and lead the congregation away from the faith." *Our Lady of Guadalupe*, 591 U.S. at 746-47. Here, the court finds that Plaintiff's allegations, including the allegations specifically cited in Plaintiff's opposition briefs, challenge Defendants' "authority to select, supervise, and if necessary, remove a minister, " *Our Lady of Guadalupe*, 591 U.S. at 746-47, based on Defendants' view of who is best to "guide [the Church] on its way," *Hosanna-Tabor*, 565 U.S. at 196, and "are so intertwined with the employment decisions that the claims cannot be separated," *Orr*, 2021 WL 5493416, at *2. (*See, e.g.*, TAC ¶¶ 22-23 (describing Church leaders' statements that the length and style of Plaintiff's sermons were not the right fit for the Church; *id.* ¶¶ 32-33 (describing Church leaders' statements that Plaintiff "was dividing the Church").) Unlike *Bollard*, which the Ninth Circuit explained was "not a case about [a church's] choice of representative," the court concludes Plaintiff's allegations in this case relate

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-00971-FWS-DFM　　　　　　　　　　　　Date: October 30, 2024
Title: Ping Gui v. First Baptist Church, *et al.*

to Defendants' judgment that he was not the best person to lead the Church or be ordained, which is "a decision to which" the court must "simply defer without further inquiry." 196 F.3d at 947.

Because the court concludes the ministerial exception bars Plaintiff's claims, the court **GRANTS** the TM Motion and the Church Defendants' Motion. *See Puri*, 844 F.3d at 1158 (explaining that "the ministerial exception can serve as the basis for dismissing a complaint at the pleadings stage under Rule 12(b)(6) [] when the elements of the defense appear on the face of the complaint") (emphasis removed).

"Although leave to amend 'shall be freely given when justice so requires,' it may be denied" where it "would not serve any purpose because to grant it would be futile in saving the plaintiff's suit." *Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1144 (9th Cir. 2015) (quoting Fed. R. Civ. P. 15(a)). Here, the court finds granting Plaintiff leave to amend his claims would not serve any purpose because to grant it would be futile. *See id.* This is TM and the Church Defendants' second motion to dismiss Plaintiff's pleading against it on the exact same basis. (*See generally* Dkt. 51 (Order Granting TM and Church Defendants' Motion to Dismiss Second Amended Complaint).) In granting TM and the Church Defendants' motion to dismiss the Second Amended Complaint, the court explained precisely what was deficient about Plaintiff's pleading and why the pleading was subject to the ministerial exception. (*See generally id.*) The court gave Plaintiff an opportunity to cure the specifically-identified deficiencies, and Plaintiff substantially reworked his claims in an attempt to separate them from issues subject to the ministerial exception. (*Compare* Dkt. 19 (Second Amended Complaint) *with* TAC.) However, the court has now found that Plaintiff's amendment failed to extricate his claims from the reach of the ministerial exception. "Nothing in the record suggests that [Plaintiff] could allege any new facts that would suffice to plausibly state its claims, and [Plaintiff] does not offer any explanation regarding how further amendment could cure the identified deficiencies." *Treadstone Servs. v. Blue Shield of California Life & Health Ins. Co.*, 2024 WL 2002999, at *6 (C.D. Cal. Mar. 27, 2024); *see also Vieira v. Mentor Worldwide, LLC*, 392 F. Supp. 3d 1117, 1132-33 (C.D. Cal. 2019), *aff'd,* 845 F. App'x 503 (9th Cir. 2021) ("The Court denies leave to amend because Plaintiffs have not explained how further amendment

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

JS-6

| | |
|---|---|
| Case No. 8:24-cv-00971-FWS-DFM | Date: October 30, 2024 |
| Title: Ping Gui v. First Baptist Church, *et al.* | |

could cure the pleading deficiencies in their Complaint.  As Plaintiffs have had two opportunities to properly plead their claims, the Court concludes that granting further leave to amend would be futile."); (*see* TM Opp. at 26 ("However, in the event that the Court finds any deficiencies in the complaint, Plaintiff respectfully requests leave to amend to address any such deficiencies."); Church Opp. at 24 (same)).  Accordingly, the court **DISMISSES** the TAC **WITHOUT LEAVE TO AMEND**.

IV.     **Disposition**

For the reasons stated above, the court **GRANTS** the TM Motion and the Church Defendants' Motion.  Plaintiff's TAC is **DISMISSED WITHOUT LEAVE TO AMEND**.

Initials of Deputy Clerk:  mku